IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| GARY D. BENNETT, <br> TDCJ No. 1060897, <br>     Plaintiff, <br><br> v. <br><br> TEXAS TECH UNIVERSITY <br> HEALTH SCIENCE CENTER, *et al.*, <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil No. 7:08-CV-056-O |

MEMORANDUM OPINION AND ORDER

Came on to be considered Defendants' Motion for Summary Judgment and Plaintiff's response thereto and the Court finds and orders as follows:

This is an action brought pursuant to 42 U.S.C. § 1983 by an inmate currently confined in the Beto I Unit of the Texas Department of Criminal Justice ("TDCJ") in Tennessee Colony, Texas. Defendants are the Texas Tech University Health Science Center and physicians at the Allred and Montford Units of the TDCJ. Complaint ¶ IV.B. During the time of the events giving rise to this lawsuit, Plaintiff was confined in the Allred Unit and then the Montford Unit.

Plaintiff claims that he was denied proper medical care for a diabetic foot ulcer and that the denial of care resulted in the unlawful amputation of two toes, and later, his lower right leg. *See* Complaint.

In order to state a colorable claim for the denial of medical care under the Eighth Amendment, an inmate must allege acts or omissions "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference" under the Eighth Amendment occurs only where a prison official subjectively knows

of and disregards a substantial risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996). However, it is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim. *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993). As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *See Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). A disagreement over the appropriate medical treatment constitutes, at most, a possible claim of medical malpractice appropriately addressed under state law. *E.g., Estelle v. Gamble*, 429 U.S. at 107-08; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

Plaintiff claims that Dr. Potter initially refused to treat his foot ulcer and told Plaintiff to take care of it himself. Complaint p. 5. He claims that, about a week later, Potter performed surgery on his right foot in Plaintiff's cell which was an unsanitary environment and which resulted in gangrene, a staph infection, and the loss of Plaintiff's right leg. *Id.* Plaintiff states that the two amputations were performed without his consent and that he died on the operating table during one of the procedures but was revived. *Id.* at p. 6. Bennett claims that his death has been omitted from the medical records and that the incident caused him to be severely disturbed. *Id.*

Defendants concede that Plaintiff suffered a diabetic foot ulcer, that two toes were amputated, and that eventually, Plaintiff's right leg was amputated below the knee. Brief in Support of Defendants' Motion for Summary Judgment at pp. 5-6 (hereinafter "Defendants' Brief at p.___."). However, they argue that Plaintiff consented to the amputations, that they have not

been deliberately indifferent to Plaintiff's need for care, and that they are entitled to qualified immunity from suit. *See* Defendants' Brief.

A review of the summary judgment evidence submitted by Defendants reflects that Plaintiff was seen by medical care providers at the Allred Unit on numerous occasions. Defendants' Brief, Exhibits A, B & C. The Court has reviewed Plaintiff's medical records and the affidavit submitted to the Court by Defendants. A summary of Plaintiff's medical records for the time period relevant to the issues in this lawsuit is aptly set forth in the affidavit of Dr. Schutt as follows:

> On June 12, Bennett was examined at the Allred Unit clinic, and was found to have a large blister on his right foot. Records indicate that Bennett noted the new blister on his foot on June 9, and it broke on June 10. Bennett was admitted to the infirmary on June 12 to care for his foot and diabetes. His foot ulcer was soaked and partially debrided the next day; however it was noted that the area of necrotic tissue was much larger than expected. Debridement is the removal of dead and/or contaminated tissue. During his first few days in the clinic, it was noted that he took only some of the medication prescribed. When questioned, he stated that he took only the pills that looked right for him. Records indicate that the Allred Unit psychiatrist interviewed him and felt that he had been non-compliant with his medications for a very long period of time. He was transferred to the Montford Unit Regional Medical Facility on June 15 and admitted to the ICU. He was transferred to TTUHSC/UMC on June 16, with a necrotic gangrenous foot. Orthopedic Surgery evaluated him and felt he needed a below-the knee- amputation to control the disease. He refused the below the-knee amputation.
>
> On June 20, I performed an I&D and a partial foot amputation. Prior to his hospital discharge Dr. Pankratz discussed the continued need for the below-the-knee amputation with the patient, and he voiced that he would like whatever was best for his health, and he agreed to the below-the-knee amputation. He was returned to the Montford Unit on June 23, and on June 29, a below the knee amputation was performed by Texas Tech Physicians. Consents were obtained for all procedures.

Defendants' Appendix in Support of Motion for Summary Judgment, Exhibit B (hereinafter "Defendant's Exhibit ___"). In his affidavit, Dr. Schutt offers the following opinion:

> It is my opinion that Gary D. Bennett's below-the-knee amputation was medically necessary because he suffered from a non-healing ulcer due to insufficient blood supply, secondary to his diabetes and not due to any alleged failure to treat his toes in a sanitary condition in the months leading up to the surgery as he alleges. The record reflects, in my medical judgment, competent and appropriate medical care while addressing Mr. Bennett's medical issues, and he received excellent medical care.

*Id.*

Plaintiff's medical records reflect that he suffered from a number of serious medical conditions including hypertension, uncontrolled diabetes and dyslipidemia. Defendants' Exhibit A pp. 21-24. Plaintiff had suffered a non-healing necrotic wound to his foot for approximately a year prior to the amputations. *Id.* Conservative efforts to heal the foot ulcer had not been effective. *Id.* The medical records support Dr. Schutt's conclusion that the amputations were medically necessary. The medical records further demonstrate that Plaintiff was seen, evaluated, and treated multiple times for a variety of medical conditions including diabetes and the foot ulcer. The summary judgment evidence indicates that Plaintiff was not denied medical care, rather, he disagrees with the nature of the care provided. A disagreement over the nature of medical care provided does not rise to the level of a constitutional violation.

To the extent, if any, that Plaintiff states a claim for medical negligence, he cannot prevail in this lawsuit. Allegations of negligence do not present a cognizable basis for relief under the Civil Rights Act. *See Daniels v. Williams*, 474 U.S. 327 (1986) (holding that negligence is not actionable under § 1983); *Davidson v. Cannon*, 474 U.S. 344 (1986) (same). Plaintiff has presented no evidence which could demonstrate that the actions of Defendants violated his constitutional right to medical care. The Court further finds that, based on the evidence before this

Court, the medical care provided by Defendants was objectively reasonable under the circumstances. As such, Defendants are entitled to qualified immunity from suit.

Summary judgment is proper when the pleadings and evidence illustrate that no genuine issue exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law provides that an issue is "material" if it involves a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248; *Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994). The nonmovant is not required to respond to the motion until the movant properly supports his motion with competent evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir. 1988).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Celotex*, 477 U.S. at 322-24; *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden," *Douglass*, 79 F.3d at 1429, as "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Merely colorable

evidence or evidence not significantly probative, however, will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249-50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

Summary judgment evidence is viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, "the [court's] function is not [ ] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The movant's motion for summary judgment will be granted if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56(e)(2).

The summary judgment evidence presented in the instant case establishes that there are no genuine issues of material fact and that Defendants are entitled to summary judgment as a matter of law.

For the foregoing reasons, it is ORDERED that Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's complaint is dismissed with prejudice.

The Clerk of Court shall transmit copies of this order to Plaintiff and to Counsel for Defendants.

SO ORDERED this 9th day of May, 2011.

*Reed O'Connor*
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**